# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### GALVESTON, DIVISION

KELLY STEVENSON-COTTON,
AND, ESTATE OF RONALD GLEN
COTTON, JR.,
PLAINTIFFS,

V.

GALVESTON COUNTY, SHERIFF
HENRY TROCHESSET, DR. ERIN
BARNHART, M.D., DR. GARRY
KILLYON, BOON-CHAPMAN
BENEFIT ADMINISTRATORS,
INC.,SOLUTA, INC., SOLUTA
HEALTH, INC., TERESA BECKER,
KATHY WHITE A/K/A KATHY
JEAN JORDAN, DEFENDANTS.

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

**Civil Case 3:21-cv-00098**
**Jury Demanded**

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE JEFFERY V BROWN:

This is a wrongful death and civil rights action brought by the Plaintiff against

Defendants for the tragic death of Ronald Glen Cotton, Jr., decedent, while he was incarcerated

in the Galveston County Jail. Plaintiff, Kelly Stevenson-Cotton, individually and on behalf of

the heirs of Ronald Glen Cotton, Jr. and as personal representative of the Estate of Ronald

Cotton, Jr. and heirs at law and complains of Defendants, Galveston County, Sheriff Henry

Trochesset, Erin Barnhart, M.D., Garry Killyon, M.D., Teresa Becker, MD, Boon-Chapman

Benefit Administrators, Inc., Soluta, Inc., Soluta Health, Inc., and Kathy White a/k/a Kathy

Jean Jordan for cause would show the Honorable Court as follows:

# I. INTRODUCTION

Thirty-year-old Ronald Cotton, Jr. was the husband of Kelly Stevenson-Cotton at the time he died on March 14, 2019, a few months after he was first taken into custody and taken care of Galveston County Jail. This is an action brought by his wife, Mrs. Stevenson-Cotton and his Estate, against Defendants, Galveston County, Sheriff Henry Trochesset ("Sheriff Trochesset"), Erin Barnhart, M.D., Garry Killyon ("Killyon"), Boon-Chapman Benefit Administrators, Inc. ("Boon-Chapman"), Soluta, Inc., Soluta Health, Inc., Kathy White a/k/a Kathy Jean Jordan ("White"), (collectively, "Defendants") for violating his civil rights pursuant to the Fourth and Fourteenth Amendment of the United States Constitution requires the right to receive adequate medical care, equal protection, and due process, while incarcerated and under the custody and control of Galveston County at the Galveston County Jail under the supervision and control of Defendants.

Defendants' actions and omissions resulted in the death of Ronald Cotton, Jr. on March 14, 2019, under the color of law in violation of his individual rights under the Fourth and Fourteenth Amendments of the United States Constitution and in violation of his civil rights pursuant to 42 U.S.C. §§ 1983, 1985, and 1988. Boon Chapman and Soulta Health Defendants, Kathy White, and Garry Killyon also committed medical negligence under the Texas Healthcare Liability Act. Plaintiffs bring this claim in the alternative to the constitutional claims.

Mr. Cotton, Jr. had the constitutional right to receive proper and adequate medical care while incarcerated and under the custody and control of Galveston County and Galveston County Jail and under the supervision and control of Sheriff Trochesset, Galveston County Jail, Killyon, White. Plaintiff is Mr. Cotton, Jr. 's wife, heir, and personal

representative of his estate seeking recovery and redress for violations of the constitutionally-protected rights of Mr. Cotton, Jr.

Defendants failed to properly train, supervise, screen, discipline, transfer, counsel, or otherwise control jail staff and medical employees who are known to engage in acts that result in the death of inmates including Mr. Cotton, Jr. Galveston County, Galveston County Jail, Killyon, and Sheriff Trochesset, as the policymakers of Galveston County Jail, had a duty, but failed to implement and/or enforce policies, practices, and procedures for Galveston County Jail that respected Mr. Cotton, Jr.'s constitutional rights to medical care. Galveston County, Galveston County Jail, and Sheriff Trochesset's failure to adequately supervise and discipline Killyon, Boon-Chapman, Soluta, Inc., Soluta Health, Inc., and White implement the necessary policies and the implementation of unconstitutional policies caused Mr. Cotton, Jr.'s unwarranted and excruciating physical and mental anguish and death. Killyon, Boon-Chapman, Soluta, Inc., Soluta Health, Inc., and White, consciously disregarded the rights of Plaintiff and Mr. Cotton, Jr., knowing that Galveston County, Galveston County Jail, and Sheriff Trochesset would approve and/or ratify their actions. For these civil rights violations and other causes of action discussed herein, Plaintiff seeks answers and fair compensation for damages and the wrongful death of Mr. Cotton, Jr.

## II. PARTIES

1.      Plaintiff, Kelly Stevenson-Cotton, is a person of the full age of majority and a resident of Galveston County, Texas. Mrs. Stevenson-Cotton sues on behalf of herself and as the personal representative of the Estate of Ronald Cotton, Jr., deceased. Mr. Cotton died in Galveston County.

Mrs. Stevenson-Cotton brings this action in her individual and fiduciary capacities.

2.      Defendant, Galveston County, is a unit of local government organized under the laws of the State of Texas. Galveston County is a "person" under 42 U.S.C. § 1983 and, at all times relevant to this case, acted under the color of law.

3.      Defendant, Galveston County Sheriff Henry Trochesset, Sheriff Trochesset is a "person" under 42 U.S.C. § 1983 and, at all times relevant to this case, acted under the color of law. Plaintiff sues Sheriff Trochesset in his individual capacity. Sheriff Trochesset was a policymaker with respect to the policies and procedures at Galveston County Jail, along with Killyon, and the private medical contractors, including Boon-Chapman, Soluta, Inc., Soluta Health, Inc., White, and Teresa Becker. Sheriff Trochesset discreetly sanctioned, approved, and knowingly consented to the unconstitutional conduct of the lower-level employees and contractors. Sheriff Trochesset had direct involvement in Mr. Cotton Jr. 's incarceration, housing, and medical care decisions and is sued in his official and individual capacities.

4.      Defendant, Garry Killyon, is and was at all times relevant to this action as the supervising physician at the Galveston County Sheriff's Office. Killyon is a "person" under 42 U.S.C. § 1983 and, at all times relevant to this case, acting under the color of law. Plaintiff sues Killyon in his individual capacity. Killyon was a policymaker with respect to the policies and procedures at Galveston County Jail, along with Sheriff Trochesset and the private medical contractors, including Boon-Chapman, Soluta, Inc., Soluta Health, Inc., White, Becker. Killyon discreetly sanctioned, approved, and knowingly consented to the unconstitutional conduct of the lower-level employees. Killyon had direct involvement in the decisions regarding Mr. Cotton, Jr. 's housing and medical care.

5.      Defendant, Teresa Becker, is and was at all times relevant to this action as the

supervising physician at the Galveston County Sheriff's Office. Becker is a "person" under 42 U.S.C. § 1983 and, at all times relevant to this case, acting under the color of law. Plaintiff sues Becker in her individual capacity. Becker was a policymaker with respect to the policies and procedures at Galveston County Jail, along with Sheriff Trochesset and the private medical contractors, including Boon-Chapman, Soluta, Inc., Soluta Health, Inc., White, and specifically Killyon Becker discreetly sanctioned, approved, and knowingly consented to the unconstitutional conduct of the lower-level employees. Becker had direct involvement in the decisions regarding Mr. Cotton, Jr.'s housing and medical care. She was the reviewing physician in which she approved of Killyon'sactions and inactions.

6.      Defendant, Boon-Chapman Benefit Administrators, Inc., is and was at all times relevant to this action as the medical provider for Galveston County and/or Galveston County Jail. Boon-Chapman was responsible for providing medical, psychiatric, dental, and pharmaceutical services at the Galveston County Jail. Boon-Chapman is a "person" under 42 U.S.C. § 1983 and, atall times relevant to this case, acting under the color of law.

7.      Defendant, Soluta, Inc., is and was at all times relevant to this action as the medical provider for Galveston County and/or Galveston County Jail. Soluta, Inc. was responsible for providing medical, psychiatric, dental, and pharmaceutical services at the Galveston County Jail. Soluta, Inc. is a "person" under 42 U.S.C. § 1983 and, at all times relevant to this case, acting under the color oflaw.

8.      Defendant, Soluta Health, Inc., is and was at all times relevant to this action as the medical provider for Galveston County and/or Galveston County Jail. Soluta Health, Inc. was responsible for providing medical, psychiatric, dental, and pharmaceutical services at the Galveston County Jail. Soluta Health, Inc. is a "person" under 42 U.S.C. § 1983 and, at all times relevant to this case, acting under the color of law.

9.      Defendant, Kathy White a/k/a Kathy Jean Jordan, R.N., is and was at all times relevant to this action as a nurse employed by Boon-Chapman, Soluta, Inc., Soluta Health, Inc., and/or Galveston County and assigned to the Galveston County Jail, serving as a licensed registered nurse at the Galveston County Jail. White is a "person" under 42 U.S.C. § 1983 and, at all times relevant to this case, acting under the color of law. Plaintiff sues White in her individual capacity.

10.     Defendant, Erin Barnhart, M.D., 6607 Hwy 1764, Texas City, Texas 77591 is a "person" under 42 U.S.C. § 1983 and, at all times relevant to this case, acting under the color of law. Plaintiff sues Barnhart in her individual capacity. She is the policymaker for the Galveston County Medical Examiner's office and implemented and adopted the policy to withhold and conceal medical examination reports, investigations, and autopsy of those who died in police custody including at the hospital after being transported from the jail in an effort to delay and conceal unconstitutional actions by other government actors.

### III. JURISDICTION AND VENUE

11.     This Court has jurisdiction over Sheriff Trochesset, Killyon, White because they are citizens of the State of Texas, and they engaged in a concerted wrongful activity, which is the subject of this lawsuit. Further, Galveston County does business in the State of Texas and is therefore subject to the jurisdiction of the State of Texas.

### IV. FACTUAL BACKGROUND

*Mr. Cotton, Jr. 's Background*

12.     Mr. Cotton, Jr. was the husband of Mrs. Kelly Stevenson-Cotton.

13.     He was loved by his family members, friends, and neighbors.

14.     He resided in Galveston County, Texas.

15.     He was a healthy man without any known medical or mental health issues.

16.     During his lifetime, Cotton was an industrious and energetic man and an excellent son and Husband.

17.     He later began to have a battle with mental health concerns that caused him to be taken into custody.

### *Arrest and Custody of Mr. Cotton, Jr.*

18.     Mr. Cotton, Jr. was arrested and transported to Galveston County Jail.

19.     While in the Galveston County Jail, he experienced constipation, vomiting, distress, and agony for weeks.

20.     Mr. Cotton, Jr. and his cellmate begged for help.

21.     Because no jailer, employee, contractor, representative, or agent of Galveston County and/or Galveston County Jail provided him with any assistance other than giving him over-the-counter stomach relief medication.

22.     Mr. Cotton, Jr. was left without any other medical assistance for his medical emergency.

23.     Defendants did nothing to address the escalating nature of the distress Mr. Cotton, Jr. was experiencing.

24. No jailer or nurse at Galveston County Jail provided medical assistance from the on-site medical staff from Killyon, White, Boon-Chapman, Soluta, Inc., and Soluta Health, Inc.

25. Despite his obvious need for medical care, Doe Jailers, 1-20, Doe Nurses 1-5, White, Boon Chapman, Soluta, Inc., and Soluta Health, Inc. did not promptly transport or request to transport Mr. Cotton, Jr. to the emergency room at the hospital at the immediate signs of distress.

26. After a prolonged period of time, while he suffered, Mr. Cotton, Jr. got off the phone with his mother and collapsed to the ground. He lost consciousness and his pulse.

27. He was observed in a lying position unresponsive, but no life-saving measures were initiated by any defendants or any other Galveston jail employees.

28. Mr. Cotton, Jr. was eventually transported to the Emergency Department of University of Texas Medical Branch ("UTMB") in Galveston, Texas, where he was pronounced dead.

### Mr. Cotton, Jr. Died in Galveston County and Galveston County Jail's Custody and Care

29. Although Mr. Cotton was pronounced dead at UTMB, he died at the jail.

30. Mr. Cotton, Jr. died from the indifference, neglect, delay, and denial of medical care and unconstitutional violations of Defendants.

31. He suffered daily, vomited blood and undigested food into the sink. He was too weak to climb to his top bunk and was not assigned a bottom bunk. His cellmate completed sick call request on his behalf and called home to get him some help.

32. As a result of Mr. Cotton's death, his wife and parents have suffered pecuniary loss from her beloved husband's death. His parents lost their son by virtue of the destruction of the

parent-child relationship, including the right to love, affection, solace, comfort, companionship, society, emotional support, and happiness, a violation of their fourteenth amendment right to familial relationships.

***Defendants' Policies, Practices, and Culpable Conduct Caused Mr. Cotton, Jr.'s Untimely and Unwarranted Death***

33.     Defendants failed to properly screen inmates for medical and mental health issues upon booking and intake.

34.     Defendants failed to properly and frequently monitor the cell areas.

35.     Sheriff Trochesset, Killyon, Becker and White failed to provide adequate training to Boon-Chapman, Soluta, Inc., Soluta Health, Inc., Doe Jailers 1-20, Doe Medical personnel 1-20 about medical care policies and procedures for inmates.

36.     Boon-Chapman, Soluta, Inc., Soluta Health, Inc., D Killyon, Becker and White failed to apply and follow any written policies and procedures related to inmates' medical and mental health care.

37.     Sheriff Trochesset, Killyon, Becker and White failed to provide adequate training to Boon-Chapman, Soluta, Inc., Soluta Health, Inc., Doe Jailers 1-20, and Doe Medical personnel 1-20 about policies and procedures for recognizing and reporting inmates in medical emergencies.

38.     Defendants Sheriff Trochesset, Killyon, Becker and White failed to provide adequate training about medical care policies and procedures for inmates to Boon-Chapman, Soluta, Inc., Soluta Health, Inc., Doe Jailers 1-20, and Doe Medical Personnel 1-20.

39.    Defendants knew or should have known that the training provided to Boon-Chapman, Soluta, Inc., Soluta Health, Inc., Doe Jailers 1-20, and Doe Nurses 1-20 was inadequate or nonexistent.

40.    Defendants Sheriff Trochesset, Killyon, and White allow and encourage treatment, examinations, and diagnoses by licensed vocational nurses (LVNs).

41.    Defendants failed to provide proper medical care to Mr. Cotton, Jr.

42.    Defendants delayed providing proper and adequate medical care to Mr. Cotton, Jr.

43.    Defendants failed to provide adequate medical care, equal protection, and due process while incarcerated and under the custody, control, and care of Defendants.

44.    Defendants' acts, omissions, lack of training, and the official customs or policies of Galveston County and Galveston County Jail caused Mr. Cotton, Jr.'s wrongful death and the injuries.

45.    Defendants failed to provide Mr. Cotton, Jr. a humane condition of confinement while in the Galveston County Jail's cell. Defendants were required to provide humane conditions of confinement for Mr. Cotton, Jr. by ensuring he and other inmates received the basic necessities of adequate medical care, among other things, and by taking reasonable measures to guarantee the inmates' safety.

46.    Defendants acted with deliberate indifference because they knew that Mr. Cotton, Jr. appeared in distress and faced a substantial risk of serious harm but disregarded that risk by failing to take reasonable measures to abate it by promptly investigating the issue, promptly requesting medical assistance, or promptly transporting him to the hospital.

47.    Defendants failed to release Mr. Cotton, Jr.'s medical records to Plaintiff upon her request.

48.    Defendants, Galveston, Trochesset, Boon Chapman and Soluta have not implemented policies and procedures to aggressively curtail death and/or injuries as a result of inadequate medical care and have not disciplined Killyon, Becker or White, or anybody personally involved in the death responsible for monitoring Mr. Cotton, Jr. while he was in his cell suffering daily.

49.    Boon-Chapman and Galveston County, through Sheriff Trochesset, Killyon, and White, directed the Galveston County Jail staff and contractor medical staff members to follow the policies, practices, and customs of not allowing inmates who are in need of emergency care to transported to the hospital by ambulance while in the custody of the Galveston County jail, instead of waiting for a jail transportation vehicle to be available which caused inmates to suffer delayed treatment for serious symptoms.

50.    Such policies, including forbidding emergency medical attention to inmates in the Galveston County Jail unless the inmates are at the brink of death, and only by the medical department personally caused the unreasonable risk of harm to inmates at the Galveston County Jail.

51.    This practice is the moving force behind the cause of the mental anguish and physical injuries suffered by Mr. Cotton, Jr., along with his death.

52.    By following such policies, Defendants were deliberately indifferent to the serious severesymptoms and medical needs of Mr. Cotton, Jr.

53.    Sheriff Trochesset, Galveston County, Galveston County Jail, Killyon, Boon-Chapman, Soluta Health, Inc., Soluta, Inc., Becker , and White, were also deliberately indifferent to the serious medical needs of Mr. Cotton, Jr. by failing to train staff and implement jail policies,

practices, customs, and usages that adequately addressed the obvious and known health and safety risks to inmates entering the Jail and injured while in the Galveston County Jail's custody.

54.     Sheriff Trochesset, Galveston County, Galveston County Jail, Killyon, Boon-Chapman, Soluta Health, Inc., Soluta, Inc., Becker and White, each supervisory defendant, failed to train staff when emergency services should be summoned to take an inmate to the local hospital emergency room when the serious medical need arises. Sheriff Trochesset, Galveston County, Galveston County Jail, Killyon, Boon-Chapman, Soluta Health, Inc., Soluta, Inc., and White, each acted with deliberate indifference to the serious medical need of Mr. Cotton, Jr. when he began demonstrating severe symptoms, ultimately leading to his collapse to the ground.

55.     Sheriff Trochesset, Galveston County, Galveston County Jail, Killyon, Boon-Chapman, Soluta Health, Inc., Soluta, Inc., Becker and White's acts and omission were violations of Mr. Cotton, Jr.'s constitutional right to be free from cruel and unusual punishment and receive timely adequate medical care resulted from a policy, pattern, custom and practice of deliberate indifference to the serious medical needs of Mr. Cotton, Jr. when he began demonstrating severe symptoms, ultimately leading to his bowels backing up, him vomiting his own feces, and collapsing to the ground.

56.     Defendants ignored Mr. Cotton, Jr.'s immediate need for medical attention and intentionally delayed providing medical treatment with wanton disregard and deliberate indifference to his serious medical needs before he collapsed to the ground and lost consciousness and died. His cause of death was reported to be due to dehydration.

*Galveston County Jail's History of Providing Inadequate Medical Care*

57.     On June 27, 2013, Arthur Lee Linear, an inmate at the Galveston County Jail, died

because of Galveston County's contractors, Boon-Chapman, Soluta Health, Inc., and/or Soluta, Inc., failedto provide obvious medical care.

58.    Four On March 14, 2015, Jesse Clayton Jacobs, an inmate at the Galveston County Jail, died because Galveston County's contractors, Boon-Chapman, Soluta Health, Inc., and/or Soluta, Inc., failed to provide obvious medical care after they failed to give him his physician prescribed medication.

59.    On November 15, 2017, Jerry Louise Biggers-Hill, an inmate at the Galveston County Jail, died because Galveston County's contractors, Boon-Chapman, Soluta Health, Inc., and/or Soluta,Inc., failed to provide obvious medical care.

60.    On December 22, 2017, Barry Edwards Phillips, an inmate at the Galveston County Jail, died because of Galveston County's contractors, Boon-Chapman, Soluta Health, Inc., and/or Soluta, Inc., failed to provide obvious medical care for his serious medical needs.

61.    On June 23, 2017, Jorge Cortez died because Galveston County's contractors, Boon-Chapman, Soluta Health, Inc., and/or Soluta, Inc., failed to address his serious medical needs after he complained for over six days of being unable to breathe while four liters of fluid-filled his lungs, and he had to be rushed to an emergency room for immediate draining of fluid from his lungs.

62.    October 21, 2019, Jeffery Peters died because Galveston County's contractors, Boon-Chapman, Soluta Health, Inc., and/or Soluta, Inc., forced Mr. Peter into a detox protocol that places an inmate in a punitive cell, failing to address his serious medical needs after 59-year-old Jeffery Lynn Peters was found down in jail, bruising to the left eye evidence of injury, Galvestonfailed to monitor him or address his serious medical needs.

***Sheriff Trochesset approved, encouraged, and ratified the wrongful, malicious, and reckless in depriving Mr. Cotton, Jr. of his constitutional rights***

63.     Sheriff Trochesset was a policymaker with respect to the policies and procedures at Galveston County Jail. He delegated non-delegable duties to White, Killyon, and the private medical contractors, including Boon-Chapman, Soluta, Inc., Soluta Health, Inc., White, and Becker. Sheriff Trochesset discreetly sanctioned, approved, and knowingly consented to the unconstitutional conduct of the lower-level employees and contractors. Sheriff Trochesset had direct involvement in Mr. Cotton Jr.'s incarceration, housing, and medical care decisions.

64.     Sheriff Trochesset was deliberately indifferent to Mr. Cotton, Jr.'s serious medical needs and constitutional right to adequate medical care, through the practice and custom of failing to train his deputies to transport seriously ill or injured inmates to the hospital when the contracted medical provider fails or refuses to do so. The practice of intentionally refusing to transport inmates to the hospital except in jail transportation vehicles, including Mr. Cotton, Jr., in an effort to cut costs resulted in the constitutional violation of Mr. Cotton, Jr 's rights.

***Kathy White, R.N. is a Convicted Felon Responsible for Inmates' Medical Care Who Failed to Provide Adequate Medical Care to Mr. Cotton, Jr. for Financial Gain***

65.     Kathy White, aka Kathy Jean Jordan, is the healthcare administrator for the private contractor, Boon-Chapman and/or Soluta Health, Inc. She is also a registered nurse and policymaker for Galveston County Jail's medical department.

66.     She is a convicted felon, as demonstrated by her federal criminal conviction, for possession of cocaine with intent to distribute.

67.     She has a serious criminal history and substance abuse history involving drugs and alcohol abuse, including an arrest for other possession of controlled substance charges, and

driving while intoxicated charge and conviction.[1] This information lends to her credibility.

68.     After a long period of time, while Mr. Cotton, Jr. suffered, White was made aware of Mr. Cotton, Jr. 's emergency situation that required her immediate medical attention and knowledge. Nevertheless, White allowed Mr. Cotton, Jr. to remain in the cell. White was deliberately indifferent to Mr. Cotton, Jr.'s serious medical needs by failing to allow him to be transported to a hospital by ambulance after she had suffered for an unknown period of time. Instead, White left Mr. Cotton, Jr. on the ground and in pain until medical and EMS personnel responded to the scene.

69.     White had a pecuniary interest in recovering bonuses based upon her saving money in medical care. As a result of this financial interest, White implemented a policy to reduce inmates' needs for emergency room visits by not allowing her employees to call for ambulance services until the inmate faced death and absolutely need for emergency intervention and transportation to the hospital.

70.     White's conduct amounts to medical negligence and deliberate indifference to Mr. Cotton, Jr.

### Garry Killyon Failed to Provide Adequate Medical Care to Mr. Cotton, Jr.

71.     Killyon was the supervising physician at the Galveston County Sheriff's Office. Killyon was a policymaker with respect to the policies and procedures at Galveston County Jail, along with Sheriff Trochesset and the private medical contractors, including Boon-Chapman, Soluta, Inc., Soluta Health, Inc., and White. Killyon discreetly sanctioned, approved, and knowingly consented to the unconstitutional conduct of the lower-level employees. Killyon

---

[1] Arrest #1 1ST DEGREE FELONY; POSS W/INT DEL CS PG1>=4 <200 Arrest Date: 09/22/2011 Case #: 003412795; Arrest #2 SECOND DEGREE FELONY; MAN/DEL CS PG III/IV 28200 GR Arrest Date: 09/22/2011 Case #: 003412795 Offense: DWI; Disposition: CONVICTED; 01/24/1984 Arresting Agency: HIDALGO CO SO EDINBURG; Date: 04/27/1984 Sentence Probation: Max: 2 Years.

had direct involvement in Mr.Cotton, Jr.'s food, housing, and medical care decisions.

72.     Killyon failed to properly supervise the medical providers, Doe Nurses 1-20, and Doe Jailers 1-20 relating to the care of Mr. Cotton, Jr., and other inmates to ensure the inmates under her care,custody, and control received adequate medical care.

73.     He was deliberately indifferent to Mr. Cotton, Jr. 's serious medical needs and constitutional right to adequate medical care through the practice, and custom of failing to train her deputies to transport her seriously ill or injured inmates to the hospital, when the contracted medical provider fails or refuses to do so, did not train or authorize her deputies to step in and provide medical care or call emergency services, thereby leaving her inmates without their well-known constitutional right to adequate medical care, under the Fourteenth and Eighth Amendments. The practice of intentionally refusing to transport inmates to the hospital, except in jail transportation vehicles, including Mr. Cotton, Jr., in an effort to cut costs resulted in the constitutional violation of Mr. Cotton, Jr.'s rights.

74.     He allowed LVNs he supervised to perform beyond their scope of practice as a matter of policy.

75.     The policy of hiring LVNs instead of registered nurses and requiring LVNs to intercede for the on-call doctor when dealing with serious medical problems delaying medical exams and diagnoses by a qualified medical provider was implemented by Galveston policymakers. This was the case that led to the delay and denial of medical care of multiple other inmates, including Jesse Jacobs, Jorge Cortez, Denise Pope, Kirk Swartz, Peter Jeffery, Jerry Louise Biggers, and the decedent herein Ronald Cotton, Jr.

### Boon-Chapman Benefit Administrators Inc. for Financial Gain

76.     Boon-Chapman is the private health contractor that was the contracted medical

provider under a memorandum of understanding ("MOU") contract with Galveston County to provide medical, psychiatric, dental, and pharmaceutical services at the Galveston County Jail, it is the parent company of Soluta Health.

77.    It sets the policy and procedures that are implemented in the Galveston County Jail relatingto the Galveston County Jail's medical needs for its inmates.

### Soluta Health, Inc./Soluta, Inc.

78.    Soluta Health, Inc. and Soluta, Inc. are corporate medical providers under contract with Galveston County to provide medical, psychiatric, dental, and pharmaceutical services at the Galveston County Jail. Soluta Inc. was established in April 2015, is an alter ego for Soluta Health Inc., a technology platform company Soluta allows and encourages its employees to cut costs by refusing its inmates access to emergency medical services at the hospital, as was with Mr. Cotton, Jr. was denied medical care for a prolonged period of time before he was transported to the hospital.

79.    Soluta Health, Inc. and Soluta, Inc. allowed and encouraged medical personnel to allow Mr.

Cotton, Jr. to remain in his cell while experiencing his serious medical emergency.

### Galveston County and Galveston County Jail

80.    Galveston County is a governmental entity that has the policy, practice, and custom is to delegate the duty to provide health care to its inmates, including Mr. Cotton, Jr. Policies, practices, and customs of cruel and unusual punishment in the Galveston County Jail to place its infirmed inmates in danger by refusing to transport inmates with serious medical conditions to the hospital by ambulance, as opposed to jail transport vehicles in an effort to cut the cost of care for inmates. These delays in providing medical and the continued failure to provide

adequate medical care when an inmate has a serious medical need are unexplainable and copious.

# V. CLAIMS

## 42 U.S.C. § 1983 Fourth, Fourteenth, and Eighth Amendment Violations Against All Defendants

81.    Plaintiff incorporates by reference all paragraphs contained herein.

82.    This is a civil rights Eighth Amendment claim brought by Plaintiff pursuant to 42 U.S. C. §§ 1983, 1985, and 1988 against all Defendants in this action. She seeks recovery and redress for violations of the constitutionally-protected civil rights.

83.    Defendants allowed Mr. Cotton, Jr. to remain in his cell without any monitoring or medical care until he vomited his own feces and collapsed before dying.

84.    Policies and practices such as delaying and depriving medical care to inmates and forbidding emergency medical attention to inmates in the Galveston County Jail unless the inmates are at the brink of death, and only by the medical department personally caused the unreasonable risk of harm to inmates at the Galveston County Jail.

85.    These policies and practices are the moving force behind the cause of the mental anguish and physical injuries suffered by Mr. Cotton, Jr., along with his death.

86.    Sheriff Trochesset and Defendants were aware there would be inmates, like Mr. Cotton, Jr., who required supervision and medical care.

87.    Sheriff Trochesset and Defendants had a duty to provide medical care to the inmates, and this duty was non-delegable.

88.    Sheriff Trochesset was personally involved in the constitutional deprivation of Mr. Cotton, Jr. because he was responsible for the inmates' medical care, namely, their health, safety,

and welfare.

89.    Sheriff Trochesset was responsible for the following de facto policies:

    a.    Defendants systematically ignored the written policies for observation of inmatesposing collapse.

    b.    Defendants disregarded the patients' medical needs because no one administered medical care to him until long after he collapsed and lost consciousness.

    c.    Defendants, by policy, allowed untrained personnel without proper medical credentials and training to exam, diagnose, monitor, and care for inmates with documented medical issues.

90.    The misconduct caused by the Defendants was objectively unreasonable and undertaken with willfulness and reckless indifference to the rights of others. In addition, the misconduct and excessive force described in the complaint "shocks the conscience."

### Medical Negligence in violation of the Texas Healthcare Liability Act against White, Killyon,Boon-Chapman, Soluta Health, Inc., Soluta, Inc., and Becker

91.    Plaintiff incorporates by reference all paragraphs contained herein.

92.    This is a medical negligence claim brought by Plaintiff for violations of the Texas Healthcare Liability Act against White, Killyon, Boon-Chapman, Soluta Health, Inc., Soluta, Inc., and Doe Nurse 1-20, as an alternative claim.

93.    White, Killyon, Boon-Chapman, Soluta Health, Inc., Soluta, Inc., and Doe Nurse 1-20 had a duty to provide adequate medical care to Mr. Cotton, Jr.

94.    White, Killyon, Boon-Chapman, Soluta Health, Inc., Soluta, Inc., and Doe Nurse 1-

20. breached their duty of care and deviated from the standard of care for healthcare medical physicians, nurses, and medical providers by:

    a. Failing to monitor Mr. Cotton, Jr.
    b. Failing to provide timely medical care when he first showed signs of distress;
    c. Failing to provide adequate medical care when he first showed signs of distress;
    d. Failing to e timely transport Mr. Cotton to the hospital, and
    e. Failing to employ life-saving techniques.

95. These failures caused Mr. Cotton, Jr.'s injuries and death.

### *Failure to Assess Against Sheriff Trochesset, Killyon, and White*

96. Plaintiff incorporates by reference all preceding paragraphs contained herein.

97. At intake, Defendants failed to screen inmates and review medical records it had on file forinmates, such as Mr. Cotton, Jr.

98. Defendants failed to utilize these medical records to properly assess inmates for all knownand unknown medical conditions.

99. Defendants failed to implement or enforce an actual procedure for assessing or determininginmates' medical risk.

100. Defendants undertook no efforts to ensure that forms were properly used or filled out byintake staff.

101. Defendants failed to adhere to all policies and procedures related to adherence to medicalcondition assessments.

102. Mr. Cotton, Jr. suffered from physical injuries as a result of the Defendants' failure toproperly assess inmates at intake.

103. Mr. Cotton, Jr. 's injuries and death were proximately caused by Defendants.

***Failure to Monitor Against Sheriff Trochesset, Killyon, and White***

104.    Plaintiff incorporates by reference all preceding paragraphs contained herein.

105.    Defendants had no enforced policy for the proper monitoring of inmates who had foreseeable risks of dehydration.

106.    Defendants only conducted "cell checks" on inmates less than the known time period stated in the written policy. Defendants did not actually enter the cells to closely monitor the inmates' health and safety.

107.    Mr. Cotton, Jr. suffered from dehydration and physical injuries by failing to properly monitor Mr. Cotton, Jr., and other inmates in the Galveston County Jail.

108.    Defendants proximately caused Mr. Cotton, Jr. s' injuries and death.

***Failure to Supervise Claim Against Sheriff Trochesset, Killyon, and White***

109.    Plaintiff incorporates by reference all paragraphs contained herein.

110.    Sheriff Trochesset, Killyon, and White, as supervisors and policymakers, failed to supervise their staff, agents, and contractors who were responsible for the direct care and medical care of Mr. Cotton, Jr.

111.    Officers were known for sleeping on the job instead of monitoring the inmates, such as Mr.

Cotton, Jr. This conduct caused Mr. Cotton, Jr. to be deprived of medically necessary care and treatment for his serious medical emergency.

112.    Sheriff Trochesset, Killyon, and White, as supervisors and policymakers, supervise Galveston County Jail staff and nurses that were responsible for the care of Mr. Cotton, Jr.

113.    Sheriff Trochesset, Killyon, and White, as supervisors and policymakers, did not

verify whether appropriate procedures were administered or whether the policies were followed by jail staff.

114.     Sheriff Trochesset, Killyon, Becker. and White, as supervisors and policymakers, did not enforce any disciplinary procedures for jail staff that failed to administer or follow written policies and procedures.

115.     At the time Mr. Cotton, Jr. was in Defendants' custody, it was clearly established that the failure to provide adequate medical care was unconstitutional and a violation of Mr. Cotton, Jr.'s constitutional rights under the Fourth and Fourteenth Amendments.

116.     Mr. Cotton, Jr. suffered from dehydration and elevated blood sugar.

117.     Defendants proximately caused Mr. Cotton, Jr.'s injuries and death.

***Failure to Train Claim Against Sheriff Trochesset, Killyon, and White***

118.     Plaintiff incorporates by reference all preceding paragraphs contained herein.

119.     Sheriff Trochesset, Killyon, and White, as supervisors and policy makers, failed to supervise their staff, agents, and contractors responsible for the direct care and medical care of Mr. Cotton, Jr.

120.     Defendants failed to train the jail staff and nurses responsible for the care of Mr. Cotton, Jr.

121.     Defendants failed to train the jailers to monitor and care for inmates with medical conditions. Defendants allowed untrained personnel without proper medical credentials and training to monitor inmates with documented medical issues.

122.     Defendants failed to adequately train staff on how to recognize inmates who are

experiencing medical emergencies properly.

123.    Mr. Cotton, Jr. suffered from dehydration and physical injuries by failing to supervise its staff properly.

124.    Defendants proximately caused Mr. Cotton, Jr.'s injuries and death.

***Ratification of Acts of Policymaker Against Galveston County and Galveston County Jail***

125.    Plaintiff incorporates by reference all paragraphs contained herein.

126.    Sheriff Trochesset, Killyon, and White, as supervisors and policymakers, failed to train or supervise their staff, agents, and contractors who were responsible for the direct care and medicalcare of Mr. Cotton, Jr.

127.    Mr. Cotton, Jr. complained of his medical emergencies to Doe Nurses 1-20 and Doe Jailers 1-20 before vomiting and collapsing to the ground. These policymakers did nothing to remedy the medical complaints. This happened in several cases at Galveston County Jail, as addressed herein, where delay and/or denial of medical attention resulted in injuries and deaths of inmates.

128.    As such, Galveston County and Galveston County Jail ratified Sheriff Trochesset, Killyon,and White's actions as their own policies, practices, customs, and procedures.

***Delay of Medical Care Fourth, and Fourteenth Amendment Claim Against All Defendants***

129.    Plaintiff incorporates by reference all preceding paragraphs contained herein.

130.    Defendants were deliberately indifferent to Mr. Cotton, Jr.'s serious medical needs anddelayed his access to adequate medical care.

131.    Doe Jailers 1-20 failed to promptly render aid or summon medical assistance

for anunknown period of time while Mr. Cotton, Jr. suffered.

132.    Mr. Cotton, Jr. suffered from serious injuries as a result of the Defendants' delay of medicalcare.

133.    Mr. Cotton, Jr. sustained injuries and death proximately caused by Defendants.

**Conditions of Confinement Fourth, and Fourteenth Amendment Claim against Galveston County, Galveston County Jail, Sheriff Trochesset, and Killyon**

134.    Plaintiff incorporates by reference all paragraphs contained herein.

135.    Defendants' inadequate record-keeping, intake procedures, and monitoring of inmates in similarly situated positions as Mr. Cotton, Jr. caused him to go long periods of time without medical attention.

136.    Mr. Cotton, Jr. suffered serious injuries after vomiting, becoming dehydrated, and collapsing.

137.    Defendants proximately caused Mr. Cotton, Jr.'s injuries.

**Conspiracy of Silence claim violation of due process under the 14th Amendment**

138.    Erin Barnhart, M.D. is the chief medical examiner for Galveston County and the policymaker for Galveston County Medical examiner's office. She has a practice of withholding autopsy reports and toxicology reports from the decedent's next of kin who have died in the custodyof the Galveston County jail.

139.    The next of kin for Kirk Swartz was denied access to Mr. Swartz's autopsy report by Dr. Barnhart's office after his custodial death in 2018.

140.    The next of kin for Jeffery Peters was denied access to Mr. Peter's autopsy report by

Dr. Barnhart's office after his custodial death in 2019.

141.     The next of kin for Ronald Cotton was denied access to Mr. Cotton's autopsy report by Dr. Barnhart's office after his custodial death in 2019.

142.     Barnhart's Medical Examiner's office has conspired with other county officials to withhold information by seeking an attorney general's opinion alleging an ongoing investigation. She has a practice of withholding completed medical examiner's reports of those who have died in the Galveston in an effort to delay and deny and impede access to the courts and information to the surviving next of Kin. This practice only occurs when the decedent dies in custody.

### WRONGFUL DEATH AND SURVIVORSHIP ACTION

143.     Plaintiff incorporates herein the facts as set forth throughout the complaint. Plaintiff files these his wrongful death and survivor action against each Defendant, Galveston County Sheriff Henry Trochesset, Galveston County, Galveston County, Boon-Chapman, Soluta Health, Kathy White, Gary Beach, Garry Killyon, Doe County Administrators, Doe Deputies, the Health Care administrator, Doe Physicians, Doe Nurses, and Doe P.A.s. pursuant to Texas Wrongful Death Statute and Survivorship Statute and asserts that Mr. Cotton's death was a result of the defendantsacts and omissions.

144.     Medical providers listed above, including were aware of the foreseeable risk of depriving Mr. Cotton's his request to be transported to the hospital. They nonetheless deprived Mr. Cottonrefused his request and left him in his cell where he was left to die.

### VI.  DAMAGES

145.     Plaintiff seeks all damages allowed by law as a result of the aforementioned forming the

basis for each of her causes of action. Plaintiff requests damages within the jurisdictional limits of the Court including:

a. Physical pain and mental anguish;
b. Loss of earning capacity and lost wages;
c. Physical impairment;
d. Medical care expenses;
e. Out-of-pocket economic losses;

f. Loss of consortium;

g. other expenses related to injuries and/or death of Mr. Cotton, Jr. ; and

h. exemplary/punitive damages, as the induvial defendants.

i. Plaintiff's reasonable and necessary attorneys' fees;

j. Costs of court;

k. Pre-judgment and post-judgment interest at the highest rates allowable by law;

j. Injunctive relief against Defendants; and

l. For such other and further relief, both general and special, at law and in equity, to whichPlaintiff may show herself entitled.

The damages sustained by Mr. Cotton, Jr. and Plaintiff were proximately caused by the Defendantsas set forth herein.

Plaintiff respectfully requests the Court and jury determine the amount of the loss Mr. Cotton, Jr.and Plaintiff have incurred in the past and will incur in the future.

There are certain elements of damages provided by law that the Plaintiff is entitled to have the jury

in this case separately consider determining the sum of money for each element that will fairly andreasonably compensate the Plaintiff.

## VII.  ATTORNEYS' FEES

After prevailing herein, Plaintiff is entitled to recover reasonable and necessary attorneys' fees and costs to enforce her constitutional rights under 42 U.S.C. §§ 1983 and 1988 from Defendants.

## VIII.    ALL CLAIMS AGAINST SHERIFF TROCHESSET STATED HEREIN HAVE BEEN DISMISSED WITHOUT PREJUDICE.

Despite the foregoing allegations against Sheriff Trochesset the claims against him in his individual capacity are dismissed without prejudice to refile.

## X. PRAYER

Plaintiff prays that she has judgment against Defendants for actual damages shown and proven at trial, for prejudgment, post-judgment interest, for costs of court and for all other relief, legal and equitable, to which she is entitled.

Respectfully submitted,

By: /s/ U.A. Lewis
U.A. Lewis
Texas Bar No. 24076511

The Lewis Law Group
P.O. Box 27353 Houston, TX 77227
T: (713) 570-6555 F: (713) 581-1017
myattorneyatlaw@gmail.com
Lead Attorney for Plaintiff

CERTIFICATE OF SERVICE

This is to certify that on this 10 th day of May, a true and correct copy of the foregoing has been served via the DC/ECF filing to all parties of record.

/s/ U.A. Lewis
U.A. Lewis